13845

JENNINGS v. SOUTHERN STANDARD INS. CO. ET AL.

(174 S. E., 433)

Before Shipp, J., Greenville, April, 1932. 

*Messrs. Ed. B. Smith* and *P. N. Becton,* for appellant,

*Messrs. Blythe & Bonham,* for respondents, 

May 7, 1934.

The opinion of the Court was delivered by Mr. Justice Bonham.

This is an appeal from an order of nonsuit granted by Judge Shipp. It appears from the statement, as it is set out in the record for appeal, that the action is one to recover damages in the sum of $50,000.00 "for a conspiracy to defraud and a participation in the fraudulent purpose." Briefly stated, the allegations of conspiracy, condensed from the complaint, are that the defendants, Southern Standard Insurance Company, A. B. Alexander, A. M. Alexander, and C. L. Andrews, entered into an unlawful agreement, or conspiracy, to wreck the Imperial Mutual Insurance Company, take over, absorb, and possess themselves of its assets and reserves. The complaint sets out at some length the facts, occurrences, and circumstances of omission and commission which it is alleged were done by the persons accused of the conspiracy, in pursuance of their purpose.

The attorneys for Southern Standard Insurance Company, A. B. Alexander and A. M. Alexander, moved before Judge

J. Henry Johnson that plaintiff be required to make his complaint more definite and certain. After hearing argument, his Honor made the following order:

"This cause came on to be heard by me on November 19 upon motion of counsel for defendants to require plaintiff to make his complaint more definite and certain by stating separately therein the alleged causes of action as set forth in said motion.

"After a full hearing of counsel, both for plaintiff and defendants, and after careful consideration of the complaint herein, I conclude, and so hold, that said complaint, as admitted by plaintiff's counsel, states only one cause of action, to wit: A cause of action for damages for conspiracy to defraud and participation in the alleged fraudulent purpose. Accordingly it is

"Ordered, that said motion be, and the same hereby is overruled."

From this order there is no appeal. It has, therefore, become the law of the case, and determines that the complaint states but one cause of action, and that the only issue to be determined is "a cause of action for damages for conspiracy to defraud and participation in the alleged fraudulent purposes."

Before the case came on for trial, Southern Standard Insurance Company went into the hands of a receiver, and the defendant, A. M. Alexander, died. The receiver was substituted in the stead of the insurance company, and the executor of his will in the stead of Mr. Alexander, as defendants, respectively.

The case proceeded to trial before Judge Shipp and a jury in the Court of Common Pleas for Greenville County. At the conclusion of taking the testimony for the plaintiff, counsel for the defendants, Southern Standard Insurance Company, A. B. Alexander and A. M. Alexander, moved the Court to order a nonsuit on the ground, *inter alia,* that there was no

evidence to support the allegation of a conspiracy which would authorize the Court to submit the case to the jury.

Judge Shipp granted the motion for nonsuit and made the following statement thereabout, as appears in the record at folios 878 to 890, both inclusive:

"Gentlemen, the way I look at this case, now, this complaint is extremely voluminous, four or five paragraphs might be absolutely eliminated, but the whole thing is predicated upon a conspiracy; it is not a suit for breach of contract; it is not a suit for breach of contract with fraudulent intent. Now, if it were a suit for breach of contract or a suit for breach of contract with fraudulent purpose I think there is plenty to go to the jury; that is as far as those people that are parties to the contract, the Southern Standard Insurance Company—now, if it was a fraud and the officers participated in it, probably they might come in too. Neither of the Alexanders here were parties to this contract, neither one of them. Andrews originally made the contract, but by the terms of the contract, there he made the contract for the purpose of turning it over to a company he was going to organize in the future; it really was made for the benefit of the Southern Standard Company, which he was to organize; the contract was made to him and by its terms it says, the contract was made by Andrews for the company that he was to organize hereafter. That is the whole understanding of it.

"Now, in order to hold anybody for a conspiracy, if those people, if they went together there and entered into conspiracy to injure the company, why, of course, they would be liable if there was any evidence, but there is no evidence here of any combination such as set up in this paragraph of the complaint, not a particle of evidence that when he called A. M. Alexander in there and that Mr. Alexander called his son, that at the time they say they entered into a conspiracy to do these things, not a particle of testimony on that subject.

"Now, it is not unlawful—suppose they did agree there to violate the contract, suppose he did do that, here is what they say about that: 'The making of the contract' that is from *Holland v. Spartanburg Herald Company* (166 S. C. 454, 165 S. E., 203, 84 A. L. R., 1336)—'The making of a contract is a legal right enjoyed by the public generally, and no man is denied the right to break a contract, but in so doing he makes himself liable for the consequences in such damages as are the natural result of his act. The mere fact that a contract was broken does not carry with it the stigma of fraud, bad faith, malice or wantonness. And frequently a contract is broken from dire necessity or the utter inability of one party to perform, and such cases would be entirely free from fraud or other evil intent.'

"It goes on to say where you break a contract and it is attended with fraud, then you are liable for punitive damages. It is not a suit for breaking a contract; the allegation is they entered into a conspiracy here to fraudulently break, ignore and deny the existence of the contract. Well, they had a perfect right to do that if they take the consequences; it is not an unlawful act. I don't see any testimony in this case; of course, I am bound by the contract; I go by those minutes. Mr. Smith in his testimony, insofar as his testimony undertook to add anything to these minutes, of course, it is not admissible; I allowed that testimony because I didn't know what the proof was going to be, I allowed him subject to—but, of course, anyone, after these minutes are here, these minutes are proved, whatever contract the directors made, and according to the minutes, there is an utter variance between the allegations of the complaint and the proof as to what the contract was; but as I say, I don't think there is evidence that the jury ought to be permitted to pass on the question of conspiracy; that under Judge Johnson's order there was, if they had this separated so as to make it a suit for the fraudulent breach of a contract, would have been a very different question, for I think there is some testimony

bearing on that point. Now, I might say this, that under the contract made by those directors, ratified by the meeting down there, the last meeting of the policyholders, ratified the contract of the directors, not a word said in there as alleged in the complaint that there was any agreement that any receiver would be appointed. The allegation is that they agreed not to appoint a receiver; nothing I have heard here in this contract referring to that at all—now, the contract itself does undertake to sell the assets of the Imperial Company but does not sell the reserves. There is testimony anyhow to show that the reserves have been turned over to the receiver; he could not sell them until they put something up in place of them. I agree with Mr. Smith that when the reserves are put up with the insurance commissioner, you may go there by his consent and approval and substitute those reserves, but the reserves are put there for the benefit of the policyholders, for their protection, as provided by law, and, of course, they are held in trust by the insurance commissioner and he is bound to hold them for the protection of the policyholders until some other security is given him to meet his approval.

"Now the testimony is here that the contract was recognized by the Southern Company because it undertook to pay off the policyholders, or to see that they were paid. I think it is a perfectly legitimate thing for an insurance company, if they could get someone, it is their duty to provide for the death claims, if they go and borrow the money, they have a right to borrow the money, they have a right, if necessary, to put up the policies that they would guarantee it, it is security to the person loaning the money. That seems to have been the custom all during the thing, for some of the claims were death claims that had been assigned; Mr. Smith had some of them; it was common practice, nothing unlawful about it. The Southern Insurance Company is liable under the terms of its contract, and if any of those policyholders have any rights, the contract was made for their benefit, why, they have a right to sue on the contract and hold the

Southern Insurance Company for every bit of it, so I grant the nonsuit on that."

The appeal is from the order of nonsuit.

There are four exceptions, with specifications of error; all of them stand upon the ground that there was evidence sufficient to take the case to the jury on the question of the alleged conspiracy; hence the error in granting the motion for nonsuit. We have carefully examined and considered the testimony and the exhibits as they appear in the record. Bearing in mind that the order of Judge Johnson, from which no appeal was taken, restricted the trial to the single issue of conspiracy, we are constrained to hold with the Circuit Judge that there was no evidence in support of the charge of conspiracy as set out in the complaint, which would have justified the Court in submitting that issue to the jury.

Accordingly, the appeal is dismissed and the judgment affirmed.

Mr. Chief Justice Blease, Messrs. Justices Stabler, and Carter and Mr. Acting Associate Justice W. C. Cothran concur.