17193

PAUL E. KIRBY, Respondent, v. GULF OIL CORPORATION and DUDLEY J. WHITLOCK, JR., Appellants

(94 S. E. (2d) 21)

12

*Messrs. Walker & White,* of Union, and *Robert McC. Figg, Jr.,* of Charleston, *for Appellant,*

*Mike S. Jolly, Esq.,* of Union, *for Appellant,*

*Messrs. James W. Workman, S. E. Barron, John D. Long* and *J. R. Flynn,* all of Union, and *Sam R. Watt* and *Chester D. Ward, Jr.,* of Spartanburg, *for Respondent,*

14

*Messrs. Walker & White,* of Union, and *Robert McC. Figg, Jr.,* of Charleston, *for Appellant, Gulf Oil Corporation,* in Reply.

*Messrs. James W. Workman, S. E. Barron, John D. Long,* and *J. R. Flynn,* all of Union, and *Sam R. Watt* and *Chester D. Ward, Jr.,* of Spartanburg, *for Respondent,* in Reply.

July 26, 1956.

Oxner, Justice.

This action was brought by Paul E. Kirby against the Gulf Oil Corporation and Dudley J. Whitlock, Jr., to recover actual and punitive damages on account of an alleged conspiracy to oust Kirby from a filling station operated by him at Union, South Carolina and drive him out of business. Each of the defendants moved to strike certain portions of the complaint and also interposed a demurrer. The motions and demurrers were overruled in an order filed on October 16, 1953, from which there was timely notice of intention to appeal. Defendants later filed separate answers. The case was tried in December, 1953 and resulted in a verdict in favor of the plaintiff for $4,500.00 actual damages against both defendants and $50,000.00 punitive damages against Gulf Oil Corporation alone. During the trial of the case defendants made timely motions for nonsuit and directed verdict and later for judgment *non obstante veredicto* or, in the alternative, for a new trial. All of these motions were refused. The defendants have appealed from the order refusing the motions to strike and overruling the demurrers and from the judgment entered on the verdict of the jury.

There are numerous questions raised by the exceptions but we need consider only those relating to the failure of the Court to direct a verdict in favor of appellants. The consideration of this question necessitates a rather lengthy review of the testimony.

D. Jean Whitlock, father of appellant Dudley J. Whitlock, Jr., owned and operated a service station at the northeast corner of North Pinckney and Academy Streets in the town of Union where he sold Gulf products at retail. He was also distributor for Gulf products in Union County.

Respondent Kirby is 51 years of age. His education did not extend beyond the sixth grade. Prior to 1945 he worked some twenty years at a service station and around ten years as a textile employee. In September, 1945, while employed at a dry cleaning establishment in the town of Union, he was approached by Whitlock, Sr., with reference to working at the filling station above mentioned located at the corner of Pinckney and Academy Streets. Kirby agreed to do so and within a few days began operating this station at a salary of $25.00 per week. The volume of business increased and four or five months later his salary was raised to $50.00 a week. This arrangement continued until January 1, 1947, at which time Whitlock, Sr., orally rented the premises, on a month to month basis, to Kirby who then took over the operation of the station for his own account. An inventory was taken of the stock of goods and merchandise, including the gasoline and oil on hand, which was sold to Kirby for $835.20 cash. In August or September, 1947, at Whitlock's insistence, Kirby bought the fixtures and equipment at the filling station for $1,100.00. Previous to that time he had had the use of this equipment as a part of the rental agreement. At first the rent was fixed at 1¢ a gallon which was added to the amount of Kirby's invoices and included in the checks issued by him to Gulf when the gasoline was delivered. Later the rent was fixed at $150.00 a month and paid by adding 1½¢ a gallon to the invoices. In Whitlock's accounting to Gulf, he would deduct the 1½¢ and credit same to

Kirby's rent account. If this amounted to less than $150.00 in any month, Kirby paid the difference to Whitlock and if it produced more than $150.00, the excess was applied on the purchase price of the equipment. Kirby didn't have the money to pay the $1,100.00 for the fixtures and equipment and it was agreed that this could be done by applying all amounts realized from the $1\frac{1}{2}\cancel{c}$ a gallon, in excess of $150.00 a month, as payments on equipment. Kirby also rented the back part of the building, used as a garage, for $50.00 a month, which was paid direct to Whitlock.

During the early part of June, 1948, Fred R. Lawrence, area sales representative of Gulf, approached Kirby in an effort to induce him to enter into an advertising program for a twelve months' period. Kirby informed Lawrence that he had no assurance that he could operate the station for that length of time, whereupon Lawrence stated that if he entered into this program arrangements would be made to enable him to continue to operate the station for a year. Lawrence said that he would get Kirby a contract so that "nobody couldn't move me out of that place for a period of twelve months." Relying on these promises, Kirby agreed to enter into the advertising agreement, which was to cost $49.50 for the ensuing year. Kirby gave Lawrence a check for $9.50 and the balance of $40.00 was to be paid in installments of $10.00 every three months. As a part of this advertising program, Kirby was to furnish Gulf with the names of his customers to whom various types of advertising material were to be sent, including Christmas cards showing Kirby's name and place of business. Subsequently Lawrence and Whitlock came to plaintiff's station to obtain the list of customers and approximately 150 names were turned over to Lawrence so that Gulf could mail to these customers Christmas cards and other advertising matter.

On or about July 15, 1948, Whitlock prepared and brought to Kirby four written agreements which were signed by Kirby and turned over to Whitlock to be forwarded to the Greenville office of Gulf for the signature of

the district manager. Copies were to be returned to Kirby within a few days. Three of these contracts provided for the sale by Gulf and the purchase by Kirby of the latter's requirements at this station of kerosene, gasoline and lubricating oil and grease. Attached to these was a rider permitting the use of Gulf's credit cards. The agreements relating to kerosene and gasoline were to run for a period of one year beginning July 15, 1948 and from year to year thereafter unless terminated by one of the parties by written notice prior to the anniversary date. The lubricating oil and grease contract ran for a period of one year, beginning August 1, 1948. The fourth agreement provided for the loan or lease by Gulf to Kirby of certain pumps and other equipment at the station. All four agreements were witnessed by Whitlock, Sr. The loan or lease agreement was to run for a period of one year. It recited that Kirby had a valid and subsisting lease on the station from Whitlock "running from month to month." On the back of this agreement Whitlock consented to the installation of the leased equipment on the premises, waived any right to a lien thereon for rent, and agreed that Gulf could at any time remove same.

All of these agreements were promptly forwarded by Whitlock to the district manager in Greenville who signed same but Kirby was not furnished with copies. According to Kirby, no notice was ever given by Gulf of a desire to terminate any of the foregoing contracts.

On or about August 1, 1948, Kirby was called by Whitlock to the Gulf bulk plant and told that he would have to purchase $2,200.00 worth of tires, tubes, batteries and supplies. A little later Whitlock and Lawrence came to Kirby's filling station and demanded that he purchase this $2,200.00 worth of merchandise. Kirby stated that he was not financially able to do so. The conversation then became quite heated. Lawrence told Kirby that he would have to buy or "there was going to be trouble." Finally, as they were leaving, Whitlock warned Kirby, "There will be other arrangements made if you don't purchase the merchandise."

On August 26, 1948 Whitlock, Sr., notified Kirby by registered mail that he had "worked out other plans for the filling station and garage buildings" and that Kirby's lease would be cancelled as of December 31, 1948. Kirby was also requested to make his plans to vacate the premises and surrender possession by that time. Soon thereafter Kirby saw Whitlock, Sr., and told him that he had a lease for a year and was not going to vacate.

Whitlock, Jr., testified that about the middle of September, 1948, his father inquired whether he would be interested in taking over the service station in controversy on January 1, 1949. He replied that he would think it over and give an answer when he returned from his vacation. He says that during the latter part of September he advised his father that he would accept the proposition. He thereupon gave notice to the Eagle Grocery Company, for whom he was then working, that he would discontinue his employment with them on November 1st. On this date he commenced working for his father at the Gulf plant at a salary of $50.00 a week. He claims that during November he went through the credit files at the Gulf plant and got a list of the customers and requested his father to order some Christmas cards. He further testified that when these cards came in they only contained the name and location of the filling station and he had a local printer add his name as owner and just before Christmas mailed the cards to the list of customers which he had obtained from his father's credit files.

Meanwhile on November 30, 1948, Gulf endeavored to cancel the advertising contract with Kirby and sent him a check for $9.50, the amount paid when he entered into the advertising agreement, but Kirby refused to cash the check and never agreed to a cancellation of the advertising agreement.

A number of the Christmas cards mailed by Whitlock, Jr., were sent to customers of Kirby with the following printed thereon: "Gulf Service Station, N. Pinckney & Academy Streets, Union, S. C., Dudley J. Whitlock, Jr.,

Owner." Several of these cards were later shown to Kirby by his customers.

On or about December 27, 1948, Kirby went to the Greenville office of the Gulf plant and requested the district manager, H. C. Davis, to furnish him with copies of the four contracts made with Gulf the previous July, stating that he had never received these agreements. Davis seemed surprised and requested his stenographer to make copies. This required several hours. After the work was done, Davis decided that he should telephone his superior in Atlanta with reference to turning over the copies to Kirby. He was instructed not to do so. Finally, Davis told Kirby to "go on back to Union and he would see that I got a copy of them." However, the agreements were never delivered to Kirby.

On January 1, 1949, Whitlock, Sr., instituted proceedings in the magistrate's court to eject Kirby from the premises. The case was tried on January 17th before the magistrate and a jury. Both sides were represented by counsel. Prior to the trial, Kirby's attorneys gave notice to the landlord to produce the agreements between Kirby and Gulf executed in July, 1948. They were produced at the trial and introduced in evidence. Among other witnesses for the landlord were Davis, Gulf's district manager, and Lawrence, Gulf's local distributor. Whitlock, Sr., claimed that Kirby's lease was from month to month while Kirby contended that when the agreement with Gulf was executed in July he had a verbal understanding with Whitlock, Sr., that he could remain in possession for one year. The jury found for Whitlock, Sr., the landlord. The magistrate thereupon issued an order requiring Kirby to vacate the premises and deliver possession to Whitlock, Sr. Counsel for Kirby made a motion for a new trial, which was overruled by the magistrate on January 28th. On February 2nd, counsel for Kirby gave notice of intention to appeal to the Circuit Court but failed to file a bond as required by Section 41-113 of the 1952 Code. Thereafter on February 15th, under the authority of *Horn v. Blackwell,* 212 S. C. 480, 48 S. E. (2d) 322, the magis-

trate issued an order authorizing and directing the sheriff to forthwith eject Kirby from the premises. Kirby declined to vacate and was ejected by the deputy sheriffs on February 17th. The merchandise at the filling station was placed on a nearby lot and the gasoline pumped from the tanks and transported to the yard of the jail and thereafter pumped into the storage tanks at the Gulf bulk plant. A day or two after the ejectment Whitlock, Jr., took over the operation of the service station.

All rent on the premises was duly paid by Kirby through December 31, 1948. He thereafter tendered the rent but Whitlock, Sr., refused to accept same. The following week after plaintiff was jected he opened a service station at Buffalo, approximately four miles from Union. On February 25th, Whitlock, Sr., commenced distress proceedings against Kirby, claiming that he owed rent in the amount of $313.33. The following day the sheriff, pursuant to the order of the magistrate, distrained upon 290 gallons of gasoline and 42 quarts of motor oil which had been removed from the demised premises. Kirby failed to file bond or otherwise contest the proceedings and thereafter on April 18th, after due advertisement, the sheriff sold the property distrained on at public auction and it was purchased by Whitlock for $60.00.

On April 27, 1949, Whitlock, Sr., brought suit in the Court of Common Pleas for Union County against Kirby to recover the balance of the purchase price due on the equipment. In this action the equipment was attached under the purchase money attachment procedure. Whitlock, Jr., signed the attachment bond as surety for his father. An answer was duly filed by Kirby but he did not give bond. On November 21, 1949, before the action was tried, Whitlock, Sr., died. On May 8, 1951, his widow, as executrix of his will, was substituted as party plaintiff. The case resulted in a consent order of settlement dated May 9, 1951, under the terms of which the plaintiff relinquished any claims against Kirby for the balance of the purchase money and the sheriff was directed to return the property to Kirby, who released all

claims against the plaintiff for damages on account of the attachment.

Shortly after the commencement of the attachment proceedings above referred to, Kirby closed down the service station operated by him at Buffalo and some time later commenced operating a station at Monarch on the outskirts of Union, but stated that this was unsuccessful because of lack of equipment and funds.

In the foregoing summary, the testimony has been considered most favorably from the standpoint of Kirby, which we are required to do in determining the sufficiency of the evidence for submission to the jury. However it should be stated that both Lawrence and Davis denied having any connection with the rental of the filling station or any effort to oust Kirby. They said Gulf had nothing to do with the institution of the ejectment and other legal proceedings which followed. Lawrence denied that he ever used any pressure on Kirby to buy Gulf's products or that he made any threats on or about August 1, 1948 as claimed by Kirby. He said that the advertising agreement was cancelled at the request of Kirby and the $9.50 returned to him. Both of these witnesses said they came to Union for the trial of the ejectment case at the request of counsel for the landlord and after getting there were regularly subpoenaed. Davis stated he knew nothing of the order placed by Whitlock, Jr., through his father for Christmas cards. He admitted Kirby's coming to see him in December, 1948 and requesting copies of the agreements made on July 15, 1948. He said after having a stenographer make copies, he called his superior in Atlanta over the telephone who instructed him not to turn the copies over to Kirby, stating that his copies had been sent to Whitlock, Sr., the local distributor, for delivery to Kirby, who should call on him for same. Whitlock, Jr., testified that he had no part in the ejectment or other proceedings and that these were brought solely by his father without consultation with any one.

Having reviewed the testimony, we now turn to the complaint. It was alleged that the conspiracy was entered into on or about August 1, 1948 between "the defendant Dudley J. Whitlock, Jr., acting in his own wrong by and through his duly authorized agent and representative D. Jean Whitlock, deceased, and the defendant corporation, Gulf Oil Corporation, acting by and through its agent, the said Fred R. Lawrence." It was then alleged that the following overt acts were committed in furtherance of said conspiracy:

(1) That on or about August 1, 1948, Whitlock, Sr., as the agent of Whitlock, Jr., and Lawrence, as the agent of Gulf, demanded that Kirby purchase $2,200.00 worth of merchandise and supplies, stating that if he did not do so immediately, "other arrangements would have to be made about the filling station."

(2) That on August 26, 1948, in disregard of the promise and agreement that Kirby could remain at the filling station for a period of one year from July 15, 1948, Whitlock, Jr., through his agent, Whitlock, Sr., with the approval of Gulf, notified Kirby by letter that his tenancy would be terminated on December 31, 1948.

(3) That on or about December 24, 1948, Whitlock, Jr., with the knowledge and approval of Gulf, mailed to the customers of Kirby Christmas cards showing Whitlock, Jr., as the owner of the station, which "humiliated and embarrassed the plaintiff, Paul E. Kirby, and did great damage to his business at the above mentioned service station."

(4) That on December 27, 1948, Gulf refused a request by Kirby for copies of the agreements entered into between them on July 15, 1948.

(5) That on January 1, 1949, in violation of the promise and agreement that Kirby could remain at the filling station for a period of one year, Whitlock, Jr., through his agent Whitlock, Sr., brought a proceeding to eject Kirby from the premises, as a result of which he was evicted by the Sheriff of Union County and his gasoline, merchandise and supplies removed therefrom, and that Lawrence and

Davis, as the agents of Gulf, rendered aid and assistance to Whitlock by testifying in his behalf on the trial of said case.

(6) That after Kirby went to work at another filling station, Whitlock, Jr., through his agent Whitlock, Sr., wrongfully caused to be issued a distress warrant against his property, forcing him to discontinue this business.

(7) That thereafter Whitlock, Jr., through his agent Whitlock, Sr., instituted a proceeding wherein certain equipment of Kirby was attached in an effort to collect an alleged balance due on the purchase price and in this action the amount claimed was far in excess of the price actually agreed upon.

After careful consideration of the testimony in the light of the allegations of the complaint, we are convinced that the Court erred in refusing appellants' motions for a directed verdict.

The complaint is based on a conspiracy entered into between Whitlock, Sr., as the agent of his son and Lawrence as the agent of Gulf and every overt act charged to Whitlock, Jr., with the exception of the mailing of the Christmas cards, is alleged to have been committed by him through his father as his agent. But we find no evidence that Whitlock, Sr., was acting as the agent of his son. Although it is alleged in the complaint that the conspiracy was formed on or about August 1, 1948, the first time the son entered the picture was about the middle of the following month, when his father sought to interest him in taking over the station on January 1, 1949. He refused to commit himself at that time but agreed to think it over and give an answer upon return from his vacation. In the latter part of September he told his father he would accept the proposition. He then notified his employer that he would discontinue his employment on November 1st and on that date commenced working for his father at the local Gulf plant. In anticipation of taking over the service station on January 1, 1949, he went through the credit files at the Gulf plant and obtained a list of customers and requested his father to order some Christmas cards.

When the cards were received, they contained only the name and location of the filling station. He had a local printer add thereon his name as owner and just before Christmas mailed these cards to the names shown on the list made up at the Gulf plant which included some of Kirby's customers. After Kirby was ejected, Whitlock, Jr., commenced operating the filling station in controversy. Certainly a father-son relationship alone is insufficient to establish agency.

But assuming that agency has been established, there is no evidence showing a conspiracy between Whitlock, Sr., and Gulf. Kirby's grievance arises from his loss of the filling station site. This loss was brought about solely by the act of Whitlock, Sr., in exercising a lawful right to terminate the tenancy, which was determined in the ejectment case as being a tenancy from month to month. Respondent is estopped to question the validity of that adjudication. *Williams v. Columbia Mills*, 100 S. C. 363, 85 S. E. 160; *Watson v. Goldsmith*, 205 S. C. 215, 31 S. E. (2d) 317; 30 Am. Jur., Judgments, Section 191. The effect of the judgment in the ejectment proceedings was to terminate the lease and vest the right of possession in Whitlock, Sr. He then had the legal right to let the premises to whomever he desired.

We have held that a conspiracy may not be based upon an act done in the exercise of a legal right. *McMaster v. Ford Motor Co.*, 122 S. C. 244, 115 S. E. 244, 29 A. L. R. 230; *Howle v. Mountain Ice. Co.*, 167 S. C. 41, 165 S. E. 724. In line with this principle, it was held in *Berman v. Holdsworth*, 274 Mass. 260, 174 N. E. 478, 480, that an action for conspiracy will not lie for terminating a tenancy by lawful means. The Court there said: "The defendant Rowell had a right to terminate the tenancy, even if that was his sole purpose, by leasing the premises to another tenant, and an action for conspiracy to accomplish this purpose by lawful means will not lie."

It is alleged in the complaint that the notice given by Whitlock, Sr., to Kirby of an intention to terminate the lease

on December 31, 1948, and the institution of the ejectment, distress and attachment proceedings were all "in violation of the inducements, representations and agreements" by Whitlock, Sr., and Gulf's agent that Kirby could occupy the filling station for a period of one year beginning July 15, 1948. This same agreement was advanced as a defense in the ejectment case but it was there adjudicated that Kirby had no such lease. Obviously, therefore, no claim for damages can be based on his eviction. This is also true as to the claim of damages arising from the distress proceedings. It is argued that since Kirby tendered payment of all rent due, there was no basis for distraining on his property. But he did not contest these proceedings and, therefore, is not now in a position to assert their invalidity. In so far as the attachment proceedings are concerned, they were terminated by a consent order wherein Kirby released all claims for damages on account of the attachment. The only other act of Whitlock, Sr., complained of is that he, along with Lawrence, sought by threats and intimidation to require Kirby to purchase $2,-200.00 worth of merchandise and supplies. Since Kirby didn't buy, no damages resulted from this incident.

It is argued that even though Whitlock, Sr., may have been acting within his legal rights, his acts became actionable when done in combination with his son and Gulf pursuant to a scheme and plan to put respondent out of business. In support of this view, the following is quoted from *Charles v. Texas Co.*, 199 S. C. 156, 18 S. E. (2d) 719, 724: " 'A more reasonable view, however, is that where an act done by an individual, though harmful to another, is not actionable because justified by his rights, yet the same act becomes actionable when committed in pursuance of combination of persons actuated by malicious motives and not having the same justification as the individual.' "

We do not think the foregoing principles are applicable to the facts of the instant case. The rule announced is ordinarily limited to certain types of conduct, such as boycotts, combinations in restraint of trade, etc., wherein a group of persons

acting in concert are able to cause an injury which could not be produced by one or two persons because of the lack of the necessary force and power. We do not have these considerations here. Whitlock, Sr., alone owned the filling station and he alone was empowered to terminate the tenancy and oust respondent from the premises. In doing so, he needed no assistance, and none of the acts alleged to have been committed either by the son or Gulf was of any aid to Whitlock, Sr., in ousting respondent.

The theory of the complaint is that after Kirby had built up a large and lucrative business, the two Whitlocks concluded to oust him so as to permit the son, who did not hold a very promising job, to take over the station. While such action may appear unfair, its legality cannot be questioned as long as the purpose was accomplished by lawful means. Kirby assumed the risk that the month to month tenancy might be terminated at any time.

It may not be amiss to add that the jury evidently concluded that the Whitlocks did not act with malicious motives for under the charge of the Court, by returning only actual damages against Whitlock, Jr., the jury, in effect, found that he was not guilty of malice. If so, it is difficult to see how Gulf, which the trial Judge stated only "played along" in order to protect its interests, could be guilty of malice. The fact alone that Gulf may have breached the advertising contract does not carry with it the stigma of fraud or malice. *Jennings v. Southern Standard Insurance Co.,* 172 S. C. 496, 174 S. E. 433. Moreover, the foundation of Kirby's claim for damages is his loss of the filling station but the loss of the station was because of his eviction by Whitlock, Sr., and certainly not by reason of the sending out of the Christmas cards.

We think our conclusion that the Court should have directed a verdict in favor of appellants is fully sustained by the principles announced in *McMaster v. Ford Motor Co., supra,* 122 S. C. 244, 115 S. E. 244 and *Howle v. Mountain Ice Co., supra,* 167 S. C. 41, 165 S. E. 724. Other

courts have held that facts much stronger and more aggravated than those now presented were insufficient to sustain an action for conspiracy. *Olmstead, Inc., v. Maryland Casualty Co.,* 218 Iowa 997, 253 N. W. 804; *Dalury v. Reginas,* 183 App. Div. 456, 170 N. Y. S. 1045, affirmed 229 N. Y. 513, 129 N. E. 896; *Drummond v. McKinley,* 65 Ga. App. 145, 15 S. E. (2d) 535. The applicable syllabus in the last mentioned case is as follows: .

"A beauty shop proprietor's petition against employees, seller of equipment which proprietor had bought under retention of title contract, and agent collecting rents, alleging illegal conspiracy to steal proprietor's business by taking possession of premises and by repossessing equipment and by continuing the business, was insufficient to state cause of action, since no illegal or tortious act was committed in view of fact that proprietor was in arrears of rent and that title retention contract authorized seller to repossess equipment if seller deemed the equipment in danger of confiscation."

*Charles v. Texas Co., supra,* 199 S. C. 156, 18 S. E. (2d) 719, does not, as counsel for respondent seem to think, require a different conclusion. There the evidence disclosed that defendant Lynch, a partner of plaintiff, and the zone manager of the Texas Company entered into a conspiracy to drive plaintiff out of the oil business in Union County and in furtherance thereof committed numerous tortious acts. Plaintiff was denied entrance to his office. Gasoline diluted with kerosene was delivered to some of the service stations. Lynch and the zone manager of the Texas Company made repeated slanderous remarks concerning the plaintiff and his business. Equipment was billed by the Texas Company at an exorbitant price and there were numerous other acts of unfair competition. The evidence in the instant case presents an entirely different factual situation.

In view of our conclusion that there should have been a directed verdict, it is unnecessary to pass upon the other exceptions.

Judgment reversed and the case remanded for entry of judgment in favor of appellants in accordance with Rule 27.

STUKES, C. J., TAYLOR and LEGGE, JJ., and G. BADGER BAKER, Acting Associate Justice, concur.