532 S.E.2d 294

**Patricia T. ANTLEY, Appellant,**

v.

**William M. SHEPHERD, individually
and Aiken County, Respondents.**

**No. 3173.**

Court of Appeals of South Carolina.

Heard April 13, 2000.

Decided May 22, 2000.

Rehearing Denied July 15, 2000.

542

Herbert W. Louthian, Sr. and Deborah R.J. Shupe, both of Louthian & Louthian, of Columbia, for appellant.

William H. Davidson, II, James M. Davis, Jr., and Christine E.W. Edenfield, all of Davidson, Morrison & Lindemann, of Columbia, for respondents.

SHULER, Judge:

Patricia T. Antley filed this public policy tort and wrongful discharge action against William M. Shepherd and Aiken County. All parties moved for summary judgment which the trial court granted in favor of Shepherd and Aiken County. Antley appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

In December 1993, Shepherd, the Aiken County Administrator, appointed Antley as Aiken County's tax assessor. As tax assessor, Antley had the sole responsibility of valuing property and had the authority to appeal disapprovals or modifications of any appraisals made by her. On September 13, 1996, in accordance with her statutory authority, Antley filed an appeal to the Administrative Law Judges Division (ALJD) from a decision of the Aiken County Board of Assessment Appeals (the board) regarding property owned by William and Eleanor Manfredi. The appeal involved what portion of the Manfredis' property should be considered residential property versus commercial property for taxation purposes. According to Antley, Mr. Manfredi had refused to provide documentation identifying what portion of the property was used for residential purposes.

On September 27, 1996, Shepherd issued a memorandum to Antley which stated, in part:

Prior to any result of the board hearing being appealed by the County to the State, such cases will be presented to me for review and discussion. Unless there is a cognizant reason to proceed to the State, we will accept the decision of our board.

In a memorandum dated October 4, 1996, Shepherd inquired about the Manfredi appeal and reiterated his position that the County would not pursue an appeal unless cognizant reasons existed. Additionally, he stated:

I do not intend that we will pursue any appeal just to argue for a valuation. I expect that the action of the Board will constitute a final judgment as far as the County is concerned.

In the same letter to Antley, Shepherd indicated that he told Mr. Manfredi that if an appeal had been initiated, the County would rescind it.

On October 10, 1996, Shepherd wrote Mr. Manfredi and assured him that the County would not appeal the board's decision in his case. He explained:

In consideration of the problems associated with the most recent reassessment and the vesting of the appel[l]ate au-

thority in the Board of Adjustment Appeals, it is deemed to be in the best interests of Aiken County to accept the decisions of that Board.

Concerned about who had the authority to appeal the board's decisions, Antley sought advice from the County Attorney. On October 10, 1996, the County Attorney wrote Antley and informed her that as tax assessor, she was the only county official with authority to appeal the board's decisions. He cautioned Antley, however, that under the Aiken County Code, the assessor served at the administrator's pleasure and that Antley risked disciplinary action by refusing to follow Shepherd's policies.

On October 16, 1996, Antley informed the administrative law judge assigned to the Manfredi case that Shepherd had directed her to withdraw the Manfredi appeal and not to appeal future decisions of the board. She advised the judge that she did not wish to withdraw the case and instead sought a continuance to resolve the question of Shepherd's authority to direct her appeals.

On October 18, 1996, Antley wrote a memorandum to Shepherd concerning his newly-adopted policy on appeals. She explained to Shepherd that Mr. Manfredi's refusal to provide her with information about his property necessitated her appeal. Antley assured Shepherd she did not intend to file frivolous appeals and alerted him that "because of the confusion involved," she requested a continuance in the Manfredi case. Antley ended her memo with the following statement:

As a public servant for almost 18 years, I have always taken my legal duties and responsibilities very seriously. I have never relinquished them and I can do no less now.

In a letter dated October 21, 1996, Shepherd attempted to "clarify" his directive by advising Antley:

You are NOT to initiate any appeal of a decision of the Aiken County Board of Appeals.

Shepherd explained that after conferring with the County Council he decided the County would accept the board's decisions. He stated that both he and the Council trusted the board's wisdom and had "no desire or intention to question their decisions by continuing cases that might not have been adjudicated in the County's favor."

On October 28, 1996, Shepherd asked Antley whether she had dismissed the Manfredi appeal. Antley answered that she had not and informed him of her belief that his directive violated state law by usurping her statutory authority. Shepherd disagreed and again directed her to dismiss the Manfredi appeal. Upon her refusal to do so, Shepherd advised Antley he deemed her refusal a serious act of insubordination and orally terminated her employment. Shepherd then wrote Antley a letter confirming his termination of her employment for insubordination. Shepherd based his decision on Antley's refusal to follow the directive in his October 21 letter.

Antley filed this suit against the County and Shepherd individually. In her second amended complaint, Antley asserted she was mandated by state law to file meritorious appeals from board decisions and thus Shepherd's directive that she not file any appeals from board decisions placed her "in a position of being required to disobey the law" as a condition of her employment. She asserted this requirement constituted a public policy tort and her termination for refusing to follow the directive was wrongful. The County and Shepherd answered, claiming Antley was an at-will employee fired for cause.

The parties stipulated to certain facts and filed cross-motions for summary judgment. In a memorandum supporting her motion for summary judgment, Antley asserted new grounds for her causes of action. Specifically, she argued that the County attempted to usurp her statutory authority, that the County Council's policy was developed in violation of the Freedom of Information Act (FOIA), and that the evidence created at least an inference that Shepherd acted outside the scope of his authority, with actual malice, or with the intent to harm her.

The circuit court granted Shepherd's and the County's motion for summary judgment finding that Antley was an insubordinate at-will employee and Shepherd was within his authority to terminate her. As to her public policy claim, the court reasoned that because state statute permitted, rather than required, her to file appeals, Shepherd's directive did not require Antley to violate the law. Regarding her FOIA argument, the court questioned whether she properly raised

that issue. In any event, the court concluded there was no evidence of a FOIA violation.

Antley filed a motion to alter or amend the court's judgment, maintaining it misconstrued her public policy argument. She asserted that her public policy claim was that the County and Shepherd had usurped her statutory authority by requiring her to abdicate to Shepherd her authority to file appeals. Antley also reasserted her FOIA argument and noted the court failed to address the issue of Shepherd's individual liability. Finally, Antley argued even if the County and Shepherd did not violate state law by usurping her authority, the evidence demonstrated she refused to abdicate her authority because of her good faith belief she was being asked to violate the law, and thus summary judgment was inappropriate. The court denied Antley's motion, stating "[h]aving gone over this case numerous times, the court still finds that the defendants were permitted to take the actions taken and that there is no genuine issue of material fact as to any issue that would allow the recovery [Antley] seeks."

## STANDARD OF REVIEW

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. In determining whether summary judgment is proper, the court must construe all ambiguities, inferences, and conclusions arising from the evidence against the moving party. *Byers v. Westinghouse Elec. Corp.*, 310 S.C. 5, 425 S.E.2d 23 (1992). When the evidentiary facts are not in dispute but there is a dispute about the inferences or conclusions to be drawn from those facts, summary judgment is not proper. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997).

## LAW/ANALYSIS

### I. Public Policy

■ Antley first argues the trial court erred in granting summary judgment to the County on her public policy tort

claim. She maintains she was required to abdicate her statutory authority to appeal valuations in violation of public policy.

■ "Generally, an at-will employee may be terminated at any time for any reason or for no reason, with or without cause." *Stiles v. American Gen. Life Ins. Co.*, 335 S.C. 222, 224, 516 S.E.2d 449, 450 (1999). Our supreme court, however, has recognized two important exceptions to that rule. First, an employee may have a cause of action where his or her at-will status has been altered by the promulgation of an employee handbook. *Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987). Second, an employee may have a cause of action where the termination of employment violates a clear mandate of public policy. *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985).

■ The public policy exception adopted in *Ludwick* provides a tort cause of action for wrongful discharge where an at-will employee's discharge "constitutes [a] violation of a clear mandate of public policy." *Id.* at 225, 337 S.E.2d at 216. The exception has been applied to situations where an employer requires an employee to violate a criminal law, and situations where the reason for the employee's termination was itself a violation of the criminal law, but it has never been limited to such situations. *Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 456 S.E.2d 907 (1995).

In evaluating whether Antley states a valid claim under the public policy exception, it is necessary to understand the nature of the relationship between her, Shepherd, and the County and to understand what duties she was authorized to carry out as tax assessor.

Aiken County functions under the Council–Administrator form of government. S.C.Code Ann. § 4–9–10(b) (1986). Under this form of government, the county administrator is responsible for the employment and discharge of employees within the council's control and is responsible for the administration of all departments the council is authorized to control. S.C.Code Ann. § 4–9–620 (1986); S.C.Code Ann. § 4–9–630(8) (1986).

All counties are required to have a full-time tax assessor who is responsible for listing and appraising real property.

S.C.Code Ann. § 12–37–90 (Supp.1999). The assessor is responsible for the operations of her office and is the sole person responsible for valuation of property. *Id.* Values set by the assessor may only be altered by the assessor "or by legally constituted appellate boards, the [state tax] commission, or the courts." *Id.* Should the values set by the assessor be altered, he or she has the right to appeal any modification or disapproval of any appraisal made. *Id.* In fact, the assessor is the only county official with standing to appeal a board decision to the ALJD. *See generally* S.C.Code Ann. § 12–60–2540(a) (Supp.1999) (within 30 days of the board's decision, property taxpayer or county assessor may appeal an assessment made by the board).

In the present case, Shepherd first directed Antley to consult with him concerning any appeal she wished to make from a board decision. He indicated such appeals would not be made unless there was a "cognizant reason to proceed . . . ." Eventually, Shepherd ordered Antley not to appeal any board decision and to withdraw the Manfredi appeal. When Antley refused to comply, Shepherd terminated her employment.

Antley argues the County and Shepherd attempted to circumvent the law and usurp her statutory authority to file appeals by ordering her to refrain from exercising that authority. We disagree.

South Carolina Code sections 12–37–90 and 12–60–2540 gave Antley, as county tax assessor, the *right* to file appeals to the ALJD and established her status as a real party in interest in such appeals. These sections thus permitted, but did not require, Antley to appeal adverse board decisions. Moreover, nothing in sections 12–37–90 or 12–60–2540 gave her the *sole discretion* in determining which cases to appeal. If the General Assembly had intended the assessor's right of appeal to be unfettered by the county administrator or county council, it certainly could have provided that the decision of whether or not to appeal a board's determination is solely that of the assessor.[1] Accordingly, we find nothing in the record before us that prevented Shepherd or the County Council from

---

1. For example, Section 12–37–90(h) establishes that the assessor is the *"sole person responsible* for the valuation of real property," thereby protecting the assessor's valuation decisions from county interference. S.C.Code Ann. § 12–37–90(h) (Supp.1999) (emphasis added).

adopting a policy that defined which cases the county would appeal upon receiving an adverse decision from the board.

Antley was appointed, rather than elected, to her position. She was thus subject to discharge by Shepherd or the County Council. *See* S.C.Code Ann. § 4–9–30(7) (1986 & Supp.1999) (vesting in the county council the authority to discharge unelected employees); S.C.Code Ann. § 4–9–630(8) (Supp. 1999) (vesting in county administrator the authority to discharge unelected employees); Aiken County Code § 22–31 (stating that county tax assessor serves "at the pleasure of the county administrator"). When Antley refused to withdraw the Manfredi appeal in conformity with Shepherd's policy decisions, Shepherd was within his authority to terminate her for insubordination.

Antley argues her duty under South Carolina Code section 12–37–90(d) to assess and reassess property in a uniform manner required her to pursue certain appeals "to maintain the uniformity of countywide assessments." The assessor, however, is required to establish uniformity in the initial assessment and reassessment decisions; nothing required Antley to pursue appeals to maintain uniformity.

Finally, Antley argues that even if Shepherd's directive did not require her to violate the law, she possessed a good faith belief that it did. She maintains her discharge violated public policy because of this good faith belief. Because her argument presents a novel issue under the public policy exception to at-will employment, Antley argues summary judgment was inappropriate. We decline to extend the public policy exception to situations where an employee is terminated for refusing to comply with a directive which she simply *believes* would require her to violate the law.

## II. Executive Session/Freedom of Information Act

■ Next, Antley argues the County's policy regarding appeals of board decisions, which she alleges was made during an executive county council session, is null and void because it was made in violation of the FOIA. Thus, she asserts, any decisions arising from the policy, including her termination, are likewise null and void. We disagree.

Initially, we note that contrary to the respondents' argument, this issue is preserved for our review. Although Antley

did not raise this issue in her complaint, she did raise it in her motion for summary judgment without objection. The issue was therefore tried by consent. *See Marietta Garage, Inc. v. South Carolina Dep't of Pub. Safety,* 337 S.C. 133, 522 S.E.2d 605 (Ct.App.1999) (issue preserved despite its omission from the amended complaint where it was argued on summary judgment without objection).

We cannot discern from the record whether the Aiken County's policy regarding appeals was made by the County Council in executive session, by the Council and Shepherd in informal discussions, or by Shepherd alone. The answer is unimportant, however, because the FOIA is designed to protect the public in general, not any individual in particular. *See Bellamy v. Brown,* 305 S.C. 291, 408 S.E.2d 219 (1991) (purpose of FOIA is to protect the public from secret government activity). Whether the initial policy was developed in violation of the FOIA is irrelevant to the question of whether Antley's termination violated public policy.[2] If the Council took action in violation of the FOIA, Antley could have filed an action under that act seeking disclosure. She cannot, however, rely on the alleged FOIA violations to seek damages for her termination.

### III. Shepherd's Individual Liability

In her final issue, Antley argues the trial court erred in granting summary judgment to Shepherd in his individual capacity because the record contained evidence which permitted the inference that Shepherd acted outside the scope of his employment with actual malice and intent to harm Antley. We disagree.

Initially, we note because Antley's termination did not violate public policy or give rise to a wrongful discharge claim, her suit against Shepherd, like her suit against the County, cannot prevail. In any event, construing the evidence and its inferences against Shepherd, there is no triable issue regarding his conduct.

---

2. Antley does not argue she was terminated for exposing FOIA violations committed by the County Council or Shepherd. Moreover, the record does not support such an argument in this case. Accordingly, we do not address whether such a termination would give rise to a cause of action under the public policy exception.

The Tort Claims Act provides "the exclusive remedy for any tort committed by an employee of a governmental entity. An employee ... who commits a tort while acting within the scope of his official duty is not liable therefor...." S.C.Code Ann. § 15–78–70(a) (Supp.1999). A governmental employee may be only sued individually if "it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C.Code Ann. § 15–78–70(b) (Supp.1999).

Shepherd was acting within the scope of his administrative duties in informing Antley of the policy she now challenges. S.C.Code Ann. § 4–9–620 (1986). Furthermore, he was acting within the scope of his office when he terminated Antley for insubordination. S.C.Code Ann. § 4–9–630(8) (1986). Contrary to Antley's assertions, the record reflects Shepherd exercised patience with Antley, giving her numerous opportunities to comply with his directive. Nothing in this record creates any genuine issue of material fact that Shepherd acted with actual malice or intent to harm Antley.

**AFFIRMED.**

GOOLSBY and HOWARD, JJ., concur.