596 S.E.2d 67

**Linda ANGUS, Appellant,**

**v.**

**BURROUGHS & CHAPIN CO., Myrtle Beach Herald, Doug Wendel, Pat Dowling, Deborah Johnson, Chandler C. Prosser, Marvin Heyd, Chandler Brigham, and Terry Cooper, Respondents.**

**No. 3744.**

Court of Appeals of South Carolina.

Heard Sept. 9, 2003.

Decided Feb. 9, 2004.

Withdrawn, Substituted and Refiled May 12, 2004.

Rehearing Denied May 12, 2004.

L. Sidney Connor, IV of Surfside Beach, for Appellant.

Jerry Jay Bender and Robert L. Widener, both of Columbia; L. Morgan Martin, Linda Weeks Gangi and Michael W. Battle, all of Conway; Scott B. Umstead, Thomas C. Brittain and William Edward Lawson, all of Myrtle Beach; and William C. Barnes, of Florence, for Respondents.

BEATTY, J.

Linda Angus appeals the circuit court' order granting summary judgment on her cause of action for civil conspiracy. We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

Linda Angus began employment with Horry County as its county administrator and chief operating officer on June 3, 1996. Her employment contract stated that she was "employed at the will" of the Horry County Council. The contract stipulated that Angus was to be given 365 days notice or 365 days severance pay in the event of a termination. On June 22,

1999, Horry County terminated her employment. Pursuant to the terms of the agreement, Angus was paid for 365 days and was extended the appropriate benefits.

On January 14, 2000, Angus filed a complaint against Burroughs & Chapin Co., Doug Wendel, Pat Dowling, Myrtle Beach Herald, Deborah Johnson, Chandler Prosser, Marvin Heyd, Chandler Brigham, and Terry Cooper ("the respondents"). Wendel and Dowling were employees of Burroughs & Chapin; Johnson was an employee of the Myrtle Beach Herald; Prosser, Heyd, Brigham, and Cooper were all Horry County Council members. Angus alleged numerous causes of action, including tortious interference with contractual relations, defamation, civil conspiracy, and unfair trade practices, all arising from the termination of her employment by Horry County. Specifically, Angus alleged that the respondents "conspired with numerous persons ... to see that Angus was terminated from her employment as Horry County Administrator." And she alleged that the respondents did this to gain financial advantage and to avoid regulatory requirements.

After orders dismissing the causes of action for intentional interference with contractual relations, defamation, and unfair trade practices, the only remaining cause of action was for civil conspiracy. In an order dated November 28, 2001, the circuit court granted summary judgment to all Respondents as to the civil conspiracy claims. Angus appeals.

## STANDARD OF REVIEW

"Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dawkins v. Fields*, 345 S.C. 23, 27, 545 S.E.2d 515, 517 (Ct.App.2001) (citing Rule 56(c), SCRCP; *Quality Towing, Inc. v. City of Myrtle Beach*, 340 S.C. 29, 33, 530 S.E.2d 369, 371 (2000)). "Summary judgment should not be granted even when there is no dispute as to the evidentiary facts if there is dispute as to the conclusions to be drawn from those facts." *Id.* at 28, 545 S.E.2d at 517 (citing *Piedmont Engineers, Architects & Planners, Inc. v. First Hartford Realty Corp.*, 278 S.C. 195, 196, 293 S.E.2d 706, 707 (1982)). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn

from the evidence must be viewed in the light most favorable to the nonmoving party." *Id.* at 28, 545 S.E.2d at 518 (citing *Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 85, 502 S.E.2d 78, 81 (1998)). "Summary judgment should be invoked cautiously to avoid improperly denying a party a trial on the disputed factual issues." *Id.* (citing *Baughman v. Am. Tel. & Tel. Co.,* 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991)).

## ANALYSIS

Angus argues the trial court erred in granting the respondents' motion for summary judgment as to the claim for civil conspiracy. We agree in part.

In South Carolina, "[a] civil conspiracy exists when there is (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes the plaintiff special damage." *Robertson v. First Union Nat. Bank,* 350 S.C. 339, 348, 565 S.E.2d 309, 314 (Ct.App.2002) (citing *Island Car Wash, Inc. v. Norris,* 292 S.C. 595, 600, 358 S.E.2d 150, 152 (Ct.App.1987)). "A civil conspiracy may, of course, be furthered by an unlawful act. [but] an unlawful act is not a necessary element of the tort. An action for conspiracy may lie even though no unlawful means are used and no independently unlawful acts are committed." *Lee v. Chesterfield Gen. Hosp.,* 289 S.C. 6, 11, 344 S.E.2d 379, 382 (Ct.App.1986). "A conspiracy is actionable only if overt acts pursuant to the common design proximately cause damage to the party bringing the action." *Future Group, II v. Nationsbank,* 324 S.C. 89, 100, 478 S.E.2d 45, 51 (1996) (citing *Todd v. S.C. Farm Bureau Mut. Ins. Co.,* 276 S.C. 284, 292, 278 S.E.2d 607, 611 (1981)).[1]

In granting summary judgment, the trial court relied exclusively on *Ross v. Life Ins. Co. of Va.,* 273 S.C. 764, 259 S.E.2d 814 (1979). There, plaintiff brought a wrongful termination action naming only his former employer. The plaintiff alleged that the former employer had conspired with others to terminate his employment. Our supreme court sustained the sum-

---

1. In *Gynecology Clinic, Inc. v. Cloer,* 334 S.C. 555, 556, 514 S.E.2d 592, 593 (1999), our supreme court clarified that "[i]n a conspiracy action, what is required is proof of the fact of damages, not certainty of amount."

mary judgment for the former employer. The court reasoned that an "[at-will] employment contract [is] terminable at the will of *either party* ... at any time for any reason or for no reason at all." *Id.* at 765, 259 S.E.2d at 815 (emphasis added).

██ *Ross* clearly holds that employers can fire at-will employees for any reason. *Moody v. McLellan,* 295 S.C. 157, 162, 367 S.E.2d 449 (1988). It also holds that an at-will employee cannot maintain an action against a former employer for civil conspiracy that resulted in the employee's termination. *Mills v. Leath,* 709 F.Supp. 671, 675 (D.S.C.1988). The trial court was therefore correct to dismiss the action as to the four council members.

Angus claims that she was suing them not as council members, but in their capacity as individuals. That argument is unpersuasive. The employment agreement stated on its face that Angus served "at the will" of the Council. Clearly, the council members acted within their authority when they fired Angus and they cannot be sued for doing what they had a right to do. *See Antley v. Shepherd,* 340 S.C. 541, 550, 532 S.E.2d 294, 298 (Ct.App.2000) (holding that a county official was immune from liability in his individual capacity since that official acted within his authority in firing an employee who was serving at the will of the official), *aff'd as modified,* *Antley v. Shepherd,* 349 S.C. 600, 564 S.E.2d 116 (2002).

██ Angus's claim against Burroughs & Chapin, Wendel, Dowling, the Myrtle Beach Herald, and Johnson ("the remaining respondents") presents a different issue than the one addressed in *Ross.*[2] As demonstrated earlier, *Ross,* by its very language, applies only to the two parties involved in the at-will employment relationship. But the remaining respondents are neither. They are not Angus's former employers. As to them, the appropriate inquiry is whether an at-will employee can maintain an action for civil conspiracy against a third-party (other than the former employer) on the theory that the third-party's conspiracy caused the former employer to fire

2. The Myrtle Beach Herald and Deborah Johnson assert that the First Amendment protects them against an action for civil conspiracy since Angus was a civil servant. However, our supreme court has already rejected a similar argument. *See Gynecology Clinic,* 334 S.C. at 556, 514 S.E.2d at 592.

the employee. We believe that an at will-employee can maintain such an action. The at-will employment doctrine does not extend its protection to third parties.

*Lee* is instructive in this regard. In that detailed opinion, the Court sustained an action by a plaintiff physician assistant whose staff privileges had been curtailed by the hospital.[3] The plaintiff claimed that the hospital had conspired with others to limit the number of procedures he could perform " 'to restrain and eliminate, for their own financial advantage and professional enhancement, the element of fair competition,' " to the plaintiffs financial and professional detriment. The hospital argued that the physician assistant had failed to state a cause of action since "a private hospital [was] free . . . to decide the nature and extent of medical practice permitted to persons it grants staff privileges." *Id.* at 9, 344 S.E.2d at 381. The Court disagreed. It ruled that the key issue was not the authority of a hospital to curtail staff privileges, but whether the decision was made "in furtherance of a conspiracy, the primary purpose of which was to injure the plaintiff." *Id.* The Court adopted the broad principle that a "combination of two or more persons willfully to injure a man in his trade is unlawful and, if it results in damage to him, is actionable." *Id.* at 13, 344 S.E.2d at 383. The Court made clear that a party can face liability even for an act "he was free to do," if that act was "done in furtherance of a conspiracy." *Id.* at 12, 344 S.E.2d at 383.

That analysis undercuts the interpretation of *Ross* offered by the remaining respondents. While *Ross* does foreclose actions against former employers, the remaining respondents go further. They insist that no action for conspiracy can lie against a third party if the employment is at-will. The underpinning of that argument, as *Ross* makes clear, is that parties cannot face liability for doing something they had a right to do. But as *Lee* explains, " 'a conspiracy to injure might give rise to civil liability even though the end were

---

**3.** That plaintiff was applying for "reappointment to the Hospital staff" but was not an employee of the hospital. *See Simmons v. Tuomey Regional Medical Center,* 341 S.C. 32, 52, 533 S.E.2d 312, 323 (2000) (clarifying that medical staff "whose only connection to a particular hospital is that he or she has staff privileges" is not necessarily a hospital employee).

brought about by conduct and acts which by themselves and apart from the element of combination or concerted action could not be regarded as a legal wrong.' " (citation omitted). *Id.* *Lee's* holding is unambiguous: even a person or party who had the right to take a certain action can be liable if that action was taken as part of a conspiracy.[4] Here, there is not even an allegation that the remaining defendants had the legal right to conspire with the Horry County Council in an effort to harm Angus. Therefore, both *Ross,* which broadly protects former employers, and *Lee,* which arguably weakens that protection, are unavailing to the remaining defendants.

Other jurisdictions have adopted similar principles. The Georgia Court of Appeals ruled in favor of an attorney who had sued a railroad company because the railroad company had "induced the [attorney's] client, and conspired with him" to fire the attorney. *Studdard v. Evans,* 108 Ga.App. 819, 135 S.E.2d 60, 64 (1964). As a result, the attorney was forced to withdraw from the case. The railroad company argued that the attorney did not state a cause of action because the client was free to fire him at any time. The court rejected the argument. The court held that "the fact that employment is at the will of the employer, [does] not give immunity to a third person who, without justification, interferes with the relation between the parties to the contract." *Id.*

North Carolina reached a similar conclusion in *Smith v. Ford Motor Co.,* 289 N.C. 71, 221 S.E.2d 282 (1976). There, the court first defined an "outsider" as "one who was not a party to the terminated contract and who had no legitimate business interest of his own in the subject matter thereof." *Smith,* 221 S.E.2d at 292. Then the court explained:

> The question presented to us by this appeal is: If A, knowing B is employed by C under a contract terminable at will by C, maliciously causes C to discharge B, which C would not otherwise have done ... can B maintain in the courts of this State an action against A for damages? Our conclusion is that he can.

*Id.* at 290.

These facts are similar if not identical to those alleged by Angus. If the remaining respondents maliciously caused Hor-

---

4. That holding would seem to be contrary to *Ross,* but we make no such determination.

ry County to discharge Angus, assuming that Angus was able to continue performing her job well—then the answer is yes, Angus can bring an action against them.[5]

As stated earlier, the trial court in the current case relied on *Ross* in reaching its conclusion. *Ross* in turn cites *Kirby v. Gulf Oil*, 230 S.C. 11, 94 S.E.2d 21 (1956) as its authority for the principle that "a conspiracy may not be based upon an act done in the exercise of a legal right." *Ross*, 273 S.C. at 765, 259 S.E.2d at 815. *Kirby* cites *McMaster v. Ford Motor Co.*, 122 S.C. 244, 115 S.E. 244 (1921) and *Howle v. Mountain Ice Co.*, 167 S.C. 41, 165 S.E. 724 (1932). But any reliance on *Ross* and those cases is misplaced. *Kirby, McMaster* and *Howle* are all easily distinguishable from Angus's claim, for there is no third party involvement in those cases.

*Kirby* involved real estate. Kirby had a month-to-month lease on a gas station, but Kirby's landlord, Whitlock, terminated the lease, causing Kirby to lose the business. Kirby sued, alleging Whitlock, Gulf Oil, and Whitlock's son conspired to take his gas station. The supreme court dismissed the case, holding that "a conspiracy may not be based upon an act done in the exercise of a legal right." *Kirby*, 230 S.C. at 27, 94 S.E.2d at 27. The court found that Whitlock, Sr., had terminated the lease for his own reasons, without any prompting from anyone. Neither Whitlock's son nor Gulf Oil had played an active role in Kirby's ruin. In other words, there was "no evidence showing a conspiracy between Whitlock, Sr., and Gulf." *Id.*

*McMaster*, too, is easily distinguished from this case. In *McMaster*, the issue revolved around a party's right to determine with whom to conduct business. McMaster sued Ford and Fords dealers because Ford would not use and would not allow its dealers to use McMaster's products on Ford-manufactured automobiles. Since the dealers were Fords agents, no independent third party was involved. *See Todd v. S.C. Farm Bureau*, 283 S.C. 155, 164, 321 S.E.2d 602, 607 (Ct.App. 1984) (citing *Muller v. Stromberg*, 427 So.2d 266 (Fla.Dist.App. 1983) (ruling that an officer or agent of a corporation acting for or on behalf of the corporation is not a third party)). In

---

5. Angus had been employed for about three years at the time and had received excellent evaluations.

dismissing the action, the *McMaster* court explained that [w]hile there is some difference of opinion, the weight of authority is in favor of the general proposition that an act done in the exercise of a legal right cannot be treated as wrongful and actionable merely because a malicious motive prompted the exercise of the right. *McMaster*, 122 S.C. at 246, 115 S.E. at 246. But that general principle protects only a person directly involved in the underlying relationship, *not* a third party.[6]

■ Moreover, the *McMaster* court relied secondarily on the absence of an unlawful act and of an unlawful means. The court reasoned that the allegation of conspiracy was of no import in the legal consequences, because[the] defendants did nothing unlawful and resorted to no unlawful means to accomplish their purpose. *Id.* at 247, 115 S.E. at 247. However, as indicated earlier, an unlawful means and unlawful act are required elements of a criminal, not civil, conspiracy. An action for civil conspiracy may exist even though no unlawful means were used. *See LaMotte v. Punch Line*, 296 S.C. 66, 70, 370 S.E.2d 711, 713 (1988); *Lee*, 289 S.C. at 11, 344 S.E.2d at 382.

Finally, in *Howle*, the plaintiff sued the defendants, alleging they conspired to eliminate competition in the ice business. Even while sustaining a dismissal of the action, the supreme court clarified its position:

[A]s to conspiracy, [the principle] that two or more may lawfully do, under agreement and regardless of purpose or

---

6. Even in cases involving the former employer, South Carolina courts and others have placed some limitations on the power to terminate at-will employees. *See, e.g., Ludwick v. Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985) (recognizing a public policy exception to the doctrine of at-will employment, reasoning that [w]here the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises); *Bd. of County Commrs. v. Umbehr*, 518 U.S. 668, 685, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (holding that the First Amendment protects independent contractors from termination or prevention of automatic renewal of at-will government contracts in retaliation for their exercise of freedom of speech); *Haddle v. Garrison*, 525 U.S. 121, 126, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) (holding that a fired at-will employee did suffer an injury in his person or property within the meaning of 1985(2), reasoning that common law had long offered a remedy for such losses).

motive whatever one may lawfully do singly *is not* the majority view or that of this court. We *should not* be understood as holding that under no circumstances can an act resulting in damage, when done by two or more pursuant to an agreement, be actionable if a like act, when done by one alone, would not be actionable. The decision here is based solely upon the insufficiency of the evidence to show an agreement between the defendants the gravamen of the charge.

*Id.* at 47, 165 S.E. at 729, *affd. on reh'g* (emphasis added).

In the current case, the remaining respondents argued, and the trial court accepted, that "[s]ince Mrs. Angus' employment was terminable at will, she has no cause of action for civil conspiracy." That conclusion is excessively broad. In *Lee,* the Court pointedly rejected the notion that "liability for the tort of conspiracy cannot be grounded on a lawful act." 289 S.C. at 12, 344 S.E.2d at 382.

The United States Supreme Court had reached a similar conclusion much earlier in *Truax v. Raich,* 239 U.S. 33, 38, 36 S.Ct. 7, 9, 60 L.Ed. 131 (1915):

It is said that the bill does not show an employment for a term, and that under an employment at will the complainant could be discharged at any time, for any reason or for no reason, the motive of the employer being immaterial. *The conclusion, however, that is sought to be drawn, is too broad. The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others.* The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, *the unjustified interference of third persons is actionable although the employment is at will.*

(emphasis added).

## CONCLUSION

Its ruling notwithstanding, *Ross* does not control the current case. The facts as alleged here place the remaining respondents squarely at the heart of the conspiracy. The theory of the case is not that Horry County decided to fire Angus, but rather that *the remaining respondents* decided to

"get rid of" Angus and induced Horry County to fire her. The trial court erred in concluding that, as a matter of law, a cause of action for civil conspiracy against a third party cannot lie in a case involving the termination of an at-will employee.

■ Based on the foregoing, the trial court's order is **AFFIRMED** as to the council members and **REVERSED** as to the remaining respondents.[7]

HUFF, J., and CURETON, A.J., concur.

---

7. The respondents raise numerous additional sustaining grounds. "[A] respondent ... may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court." *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000). However, "[i]t is within the appellate court's discretion whether to address any additional sustaining grounds." *Id.* The Court chooses not to address them as they have become largely moot.