705 S.E.2d 58

Henry L. PRIDGEN, Respondent,

v.

Robert WARD, Charles Sheppard, and Karen Hair, Appellants.

No. 4770.

Court of Appeals of South Carolina.

Heard Oct. 7, 2010.
Decided Dec. 22, 2010.
Rehearing Denied Jan. 28, 2011.

240

Andrew F. Lindemann and Lake Eric Summers, both of Columbia, for Appellants.

J. Lewis Cromer, of Columbia, for Respondent.

LOCKEMY, J.

Robert Ward, Charles Sheppard, and Karen Hair (the Appellants) appeal the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict with regard to Henry Pridgen's civil conspiracy claim. The Appellants argue (1) they acted at all times within the scope of their employment, (2) Pridgen failed to present evidence of a joint assent by the Appellants to carry out a conspiratorial objective, and (3) they were entitled to immunity under the South Carolina Tort Claims Act. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On May 24, 2004, Pridgen was fired by the South Carolina Department of Corrections (SCDC) from his position as the Associate Warden of Operations at the Lee Correctional Institution (Lee). SCDC charged Pridgen with gross misconduct and intentional improper behavior after an internal "shakedown" investigation at Lee in January 2004. Pridgen filed this civil conspiracy action in December 2005. In his complaint, Pridgen alleged the Appellants "met, schemed, planned and conspired and put together an agenda to purposely harm [him] and cause him to be terminated."

The conflict between Pridgen and the Appellants began after a hostage situation occurred at Lee in October 2003. Ward, SCDC's Deputy Director of Operations, Sheppard, SCDC's Inspector General, and Hair, an SCDC Investigator, all responded to the hostage situation. According to Pridgen, Ward and Sheppard were dissatisfied with the performance of

Laurie Bessinger, the Director of Training and Security for SCDC. Following the hostage situation, Pridgen maintains Ward told him he had problems with Bessinger and if Pridgen told anyone he would call Pridgen a liar. Pridgen also contends Lee's Warden, Calvin Anthony, told him Ward wanted Pridgen to provide false and derogatory information about Bessinger in the After Action Report he was compiling about the hostage situation. Pridgen refused to comply with Ward's request.

Hair was assigned to Lee as an Investigator in Fall 2002. Pridgen and Hair had a strained relationship, and Hair did not get along with other employees at Lee. Pridgen had several meetings with Ward and Sheppard to discuss the problems he had with Hair. Anthony also met with Ward about resolving the problems between Pridgen and Hair. According to Anthony, Ward told him it was a fight he could not win.

In January 2004, Ward authorized a shakedown inspection at Lee. Contrary to custom, Anthony and Pridgen were not given prior notice of the shakedown. During the shakedown, Ward and Hair went directly to inspect the boiler room. According to an SCDC memo prepared by Sheppard, the boiler room inspection revealed a number of unauthorized items including computers, software, cameras, bulk food items, and an electric frying utensil. The memo also stated inmates had been allowed in the boiler room unsupervised, and that inmates in the boiler room had access to the internet. In addition, the investigation revealed an inmate had, on prior occasions, been in possession of security keys.

Pridgen was suspended as a result of the discoveries made during the shakedown and transferred to the Wateree Correctional Institution. After Pridgen received notice of his suspension, investigators removed files from his office. Included in the confiscated files was a file Pridgen kept on Hair. Hair's file contained complaints Pridgen received from other employees about Hair, and the notes Pridgen took during his meetings with Sheppard and Ward. According to Pridgen, Sheppard was upset Pridgen kept a file on Hair and told Pridgen he would find a way to have him fired. Several months after his transfer to Wateree, Pridgen's employment was terminated.

During trial in April 2008, the trial court denied the Appellants' motion for a directed verdict. Following trial, the jury returned a verdict in favor of Pridgen and awarded him $372,000 in actual damages. The Appellants' post-trial motions for a judgment notwithstanding the verdict (JNOV), a new trial absolute, and a new trial nisi remittitur were all denied. This appeal followed.

## STANDARD OF REVIEW

"When reviewing the denial of a motion for directed verdict or JNOV, this Court applies the same standard as the trial court." *Gibson v. Bank of America, N.A.*, 383 S.C. 399, 405, 680 S.E.2d 778, 781 (Ct.App.2009). "The Court is required to view the evidence and inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party." *Id.* "The motions should be denied when the evidence yields more than one inference or its inference is in doubt." *Id.* "An appellate court will only reverse the [trial] court's ruling when there is no evidence to support the ruling or when the ruling is controlled by an error of law." *Id.*

## LAW/ANALYSIS

### I. Scope of Employment

The Appellants argue the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict because they acted at all times within the scope of their employment. We disagree.

"A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillan v. Oconee Memorial Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006); *Cricket Cove Ventures, LLC v. Gilland*, 390 S.C. 312, 701 S.E.2d 39 (S.C.Ct.App.2010). "It is well-settled in South Carolina that the tort of civil conspiracy contains three elements: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; (3) causing plaintiff special damage." *Cowburn v. Leventis*, 366 S.C. 20, 49, 619 S.E.2d 437, 453 (Ct.App.2005). "In order to establish a conspiracy, evidence, either direct or circumstantial, must be produced

from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Id.*

"A civil conspiracy cannot be found to exist when the acts alleged are those of employees or directors, in their official capacity, conspiring with the corporation." *McMillan,* 367 S.C. at 565, 626 S.E.2d at 887. As a result, "no conspiracy can exist if the conduct challenged is a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Id.* However, although a corporation cannot conspire with itself, "the agents of a corporation are legally capable, as individuals, of conspiracy among themselves or with third parties." *Lee v. Chesterfield General Hosp., Inc.,* 289 S.C. 6, 14, 344 S.E.2d 379, 383 (Ct.App.1986).

While the Appellants argue Pridgen failed to present evidence they acted outside the scope of their employment, Pridgen maintains the evidence in the record indicates the Appellants conspired against him for personal reasons that constitute intentional acts outside the scope of their employment. Pridgen alleges the Appellants lied and conspired to have his employment with SCDC terminated. Specifically, Pridgen maintains Ward desired to get rid of Bessinger and developed a personal vendetta against him when he refused to provide false information in Anthony's After Action Report. Pridgen also contends the Appellants' decision to ignore custom and not give notice of the shakedown at Lee is suggestive of personal, rather than professional, motives. The Appellants argue Pridgen failed to present any evidence they had personal, non-employment related reasons for investigating Pridgen's conduct.

"An act is within the scope of a servant's employment where [it is] reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business." *Armstrong v. Food Lion, Inc.,* 371 S.C. 271, 276, 639 S.E.2d 50, 52 (2006). "On the other hand, if the servant acts for some independent purpose of his own, wholly disconnected with the furtherance of his master's business, his conduct falls outside the scope of his employment." *Crittenden v. Thomp-*

*son–Walker Co., Inc.*, 288 S.C. 112, 116, 341 S.E.2d 385, 387 (Ct.App.1986).

We find the evidence in the record creates more than one reasonable inference as to whether the Appellants acted outside the scope of their employment. The jury could infer from the evidence presented that the Appellants' actions were personally, not professionally, motivated, and were wholly disconnected from the business of SCDC. The jury could determine from the Appellants' deviation from custom in failing to give notice of the shakedown, Pridgen's refusal to comply with Ward's request that Pridgen provide false information about Bessinger in the After Action Report, and Pridgen's poor relationships with the Appellants and their subsequent meetings regarding Pridgen, that the Appellants had personal motives for harming Pridgen and their conduct was not necessary to accomplish the purpose of their employment. Ultimately, the jury could find the Appellants intended to harm Pridgen, and thus, their conduct served an independent purpose, wholly disconnected from the business of SCDC. Therefore, viewing the evidence in the light most favorable to Pridgen, we find the trial court properly denied the Appellants' motions for directed verdict and judgment notwithstanding the verdict.

At the conclusion of their argument regarding scope of employment, the Appellants assert Pridgen's civil conspiracy claim fails because he was an at-will employee.[1] The Appellants rely on *Angus v. Burroughs & Chapin Co.*, 358 S.C. 498, 596 S.E.2d 67 (Ct.App.2004), to support their contention that the termination of an at-will employee cannot support a cause of action for civil conspiracy. In *Angus,* this court affirmed the trial court's dismissal of Angus' civil conspiracy claim against four members of the Horry County Council (Council). 358 S.C. at 503, 596 S.E.2d at 70. Angus, the Horry County Administrator, was terminated from her employment by the Council. *Id.* at 500–01, 596 S.E.2d at 69. Relying on *Ross v. Life Insurance Co. of Virginia*, 273 S.C. 764, 259 S.E.2d 814 (1979), the *Angus* court held an at-will

---

1. In its pre-trial order denying the Appellants' motion for summary judgment, the trial court determined Pridgen was not an at-will employee.

employee could not maintain an action against a former employer for civil conspiracy that resulted in the employee's termination. 358 S.C. at 503, 596 S.E.2d at 70. This court also determined Angus' argument that she was suing them not as council members, but in their individual capacities, was unpersuasive. *Id.* This court noted Angus' employment agreement specified that she served "at the will" of the Council. *Id.* Therefore, because the council members acted within their authority when they fired Angus, they could not be sued for doing what they had the right to do. *Id.*

Here, Pridgen's civil conspiracy claim was not against his employer. Rather, Pridgen's claim was against the Appellants, who did not have the power to terminate his employment. Because Pridgen did not serve at the will of the Appellants, they were not immune from suit by Pridgen for civil conspiracy. Therefore, the trial court did not err in denying Appellants' motions for a directed verdict and a judgment notwithstanding the verdict.

## II. Joint Assent

The Appellants argue the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict because Pridgen failed to present any evidence of a joint assent by the Appellants to carry out a conspiratorial objective. We disagree.

"In order to establish a conspiracy, evidence, either direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Cowburn,* 366 S.C. at 49, 619 S.E.2d at 453. "Conspiracy may be inferred from the nature of the acts committed, the relationship of the parties, the interests of the alleged conspirators, and other relevant circumstances." *Moore v. Weinberg,* 373 S.C. 209, 228, 644 S.E.2d 740, 750 (Ct.App.2007). "Because civil conspiracy is 'by its very nature covert and clandestine,' it is usually not provable by direct evidence." *Id.* (quoting *Island Car Wash. Inc. v. Norris,* 292 S.C. 595, 601, 358 S.E.2d 150, 153 (Ct.App.1987)).

The Appellants argue Pridgen failed to present any evidence, direct or circumstantial, by which the jury could

reasonably infer a joint assent by the Appellants to have Pridgen's employment terminated. They maintain Pridgen's claims against them amount only to "mere speculation." In response, Pridgen argues the relationship of the Appellants and the nature of the acts they committed are evidence of a conspiracy. According to Pridgen, the Appellants "met to discuss [him] numerous times, and the Appellants acted together, in concert, in a course of action that was contrary to the normal policy and procedure at SCDC, but which furthered their own personal objective to harm [him]."

We find the evidence in the record creates more than one reasonable inference as to whether the Appellants engaged in a joint assent to have Pridgen's employment terminated. First, we note the record contains evidence the Appellants had motive to harm Pridgen. Pridgen testified he refused Ward's request to discredit Bessinger by including false statements about Bessinger in Anthony's After Action Report. Furthermore, Pridgen and Hair had an unfriendly relationship. According to Terry Taylor, SCDC's Assistant Division Director of Investigations and Hair's direct supervisor, Hair took her concerns about Pridgen directly to Sheppard instead of bringing them to him first. We also note that, according to Pridgen, Sheppard was upset Pridgen kept a file on Hair and told Pridgen he would find a way to have him fired.

The jury also heard testimony regarding meetings between the Appellants. Prior to the shakedown, Ward and Sheppard met with Hair on several occasions regarding problems between Pridgen and Hair. Hair also e-mailed Sheppard in January 2004 regarding Pridgen and the conditions in the boiler room at Lee. Sheppard admitted he forwarded Hair's e-mail to Ward. Furthermore, Ward and Sheppard had a professional friendship and the two men ate lunch together several times a week.

We also note the record contained evidence that not all of the unauthorized items Ward and Hair found in the boiler room were contraband. Anthony testified the surveillance cameras located in the boiler room were approved by Ward to monitor inmate movement. Additionally, Pridgen testified Honeywell brought computers into the boiler room to maintain Lee's HVAC system. Also, in a memo posted in the boiler

room, Anthony approved a request to allow inmates to work unsupervised in the boiler room. According to Pridgen, inmates had been allowed to work unsupervised in the boiler room since before he began working at Lee.

Viewing the evidence in the light most favorable to Pridgen, we find the trial court properly denied the Appellants' motions for a directed verdict and a judgment notwithstanding the verdict. The jury could infer from the nature of the acts committed by the Appellants as well as the relationships and interests of the Appellants that they conspired to have Pridgen's employment terminated. Although the evidence presented was circumstantial, there was at least some evidence to the support the trial court's denial of the Appellant's motions.

### III. Tort Claims Act

The Appellants argue the trial court erred in failing to find they were entitled to immunity under the South Carolina Tort Claims Act (SCTCA) as a matter of law.[2] We disagree.

Pursuant to section 15–78–70(a) of the South Carolina Code (2005), "[a]n employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)." Section 15–78–70(b) provides:

> Nothing in the chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

S.C.Code Ann. § 15–78–70(b) (2005). Section 15–78–30(i) defines "scope of official duty" as "(1) acting in and about the official business of a governmental entity and (2) performing official duties." S.C.Code Ann. § 15–78–30(i) (2005).

The Appellants contend Pridgen failed to introduce any evidence they acted outside the scope of their official duty. They argue Pridgen, as the Associate Warden for Operations, was the subject of a legitimate investigation with respect to the operation of the boiler room, and the discoveries made

---

2. S.C.Code Ann. §§ 15–78–10 to –200 (2005).

during the shakedown represented clear and actionable violations of SCDC policy. Additionally, the Appellants argue the "intent to harm" exception in section 15–78–70(b) should not apply in cases where a supervisor or co-employee takes action within his authority to investigate and discipline another employee. Pridgen argues the Appellants' actions were outside the scope of their employment and were committed with the intent to harm him. Pridgen alleges the Appellants had personal motives and conducted a biased investigation.

█ As discussed above, there was at least circumstantial evidence in the record to support a finding by the jury that the Appellants acted outside the scope of their employment and with the intent to harm Pridgen. The jury could infer from the relationship of the Appellants, as well as the nature of their actions, that they intended to harm Pridgen and conspired to have his employment terminated for personal reasons, wholly disconnected from the furtherance of SCDC's business. Accordingly, the trial court did not err in determining the Appellants were not entitled to immunity under the SCTCA as a matter of law.

## CONCLUSION

The trial court's denial of the Appellants' motions for directed verdict and judgment notwithstanding the verdict is

**AFFIRMED.**

SHORT and THOMAS, JJ., concur.