**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

John Doe, Appellant,

v.

Beaufort Jasper Academy for Career Excellence; Beaufort County School District; and Jasper County School District, Defendants,

Of which Beaufort Jasper Academy for Career Excellence is the Respondent.

Appellate Case No. 2018-000641

―――――――――

Appeal From Jasper County
Kristi Lea Harrington, Circuit Court Judge

―――――――――

Unpublished Opinion No. 2021-UP-010
Submitted September 1, 2020 – Filed January 13, 2021

―――――――――

**AFFIRMED**

―――――――――

Richard Alexander Murdaugh and John Elliott Parker, Jr., both of Peters, Murdaugh, Parker, Eltzroth & Detrick, PA, of Hampton, for Appellant.

Kenneth Allen Davis, Tierney Felicia Dukes, and Charles J. Boykin, all of Boykin & Davis, LLC, of Columbia, for Respondent.

**PER CURIAM:**  In this defamation action, Appellant John Doe argues the circuit court erred in granting Respondent Beaufort-Jasper Academy for Career Excellence's ("the Academy") motion for summary judgment.  Appellant, a former employee of the Academy, contends that summary judgment was improper because there was sufficient evidence to defeat the motion and discovery was incomplete.  The Academy argues summary judgment was proper because the acts giving rise to the defamation claim, if committed by an employee, were outside the scope of the employee's official duties.  Thus, the Academy contends, it is not liable.  We affirm.

## FACTS

Appellant's claim stems from a series of anonymous letters he alleges contain false and defamatory allegations against him.  The first letter was addressed to and received by his wife on or about August 21, 2013.  The letter alleged that Appellant had an extramarital affair with his then co-worker, Jane Doe.  About two days later, Appellant's wife received another letter with the same allegations; however, this letter was mailed to Appellant's father's post office box.  Finally, the Academy's director ("the Director") received a third letter.  In the letters, the author alleged to have observed Appellant and Jane Doe kissing in Appellant's classroom.

On October 19, 2013, Appellant filed a complaint and motion for a temporary restraining order[1] against the Academy, Jasper County Sheriff's Office, Beaufort County School District (BCSD), Jasper County School District (JCSD), and the Director, alleging an employee of the Academy was involved in publishing the letters.  Then, on August 18, 2015, Appellant filed a complaint for negligence and defamation against the Academy, BCSD, and JCSD.

On June 7, 2016, the Academy served Appellant with interrogatories and a request for production.  Appellant failed to respond to the Academy's requests, and the Academy moved to compel discovery on August 22, 2016.  Appellant again failed to respond, and on November 2, 2016, the Academy moved for an order requiring Appellant to show cause as to why he should not be held in contempt.

Appellant was deposed on January 24, 2017.  He testified that he did not know who wrote the letters, but it had to be an employee who had access to his personnel

---

[1] The restraining order sought to prevent the Academy from removing, destroying, or altering its computers' hard drives or other relevant evidence.

file. Further, he stated that the Director had tampered with the hard drive from a school computer and when confronted about this fact by authorities, the Director resigned the next day. Moreover, Appellant admitted that whoever wrote the letters did it for personal reasons—not to benefit the Academy—and that it was not foreseeable that an employee would go into the personnel files and retrieve personal information to produce and send defamatory letters.

On June 15, 2017, the Academy filed a motion for summary judgment arguing: (1) Appellant could not establish that the Academy committed any negligent act or omission that proximately caused Appellant's alleged damages; (2) the Academy was not liable for any alleged failure to adopt or enforce any written law or policy concerning management of personnel records or to prevent an employee from creating and publishing the alleged defamatory statements; (3) the Academy was immune from liability because the production of the defamatory statements by an employee was outside the scope of any employee's official duties; and (4) the Academy was not liable for any alleged employee conduct which constitutes actual malice or intent to harm. Shortly thereafter, a consent order was filed by the parties to extend the deadline for discovery from June 30, 2017, to September 30, 2017.

A hearing on the summary judgment motion was held in the Beaufort County Court of Common Pleas on August 24, 2017. In response to the Academy's argument that summary judgment should be granted because the actions giving rise to the defamatory letters were outside the scope of any employee's official duties, Appellant argued summary judgment was premature because he had not yet completed discovery. Particularly, Appellant argued he did not have a chance to depose the employee (or employees) he believed produced the letters. When pressed by the court to explain what duty the Academy had to control the behavior of the employee and how the behavior was related to the employee's employment, Appellant responded:

> Well, I think it's a factual issue right now, but it's a relational point because you've got school property being used by the school's director addressing the alleged conduct of two school employees.

Further, after the circuit court inquired as to why the suspected author of the letter had not been deposed in 300 days, the parties engaged the court in the following colloquy:

Appellant:   We've got scheduling orders and it's moved a little slower than I would like and I know Ms. Dukes would like.  We, actually, in July entered a scheduling order and we've got dates coming up in September.  So we've agreed —

The Court:   Depositions?

Appellant:   No, ma'am, we've got mediation.   We've got—

The Court:   You haven't mediated this case yet?

Academy:   No, Your Honor, we have been kind of working—we've done one deposition of [Appellant].  [Appellant] has not deposed any of the individuals that he has just alleged may have did these statements.  Again, this is—we've done the deposition of the plaintiff.

Appellant:   That's correct[, y]our Honor.  And to be fair, I have asked to depose that individual.  And they   don't have control over him anymore because   he's   not   an employee anymore.  We  highly suspect we know who did it, but he's not been confronted with the evidence and put under oath yet.  And the issue dealing with intent, we don't know what his intention was.

After taking the matter under advisement, the circuit court granted the Academy's motion for summary judgment later that day.

On March 8, 2018, the circuit court denied Appellant's motion to reconsider, finding Appellant failed to produce a scintilla of evidence to defeat the arguments that the defamation claim was barred by the South Carolina Tort Claims Act ("Tort Claims Act")[2] and that Appellant failed to produce evidence to support his claim for negligence.  This appeal followed.

## ISSUE ON APPEAL

[2] S.C. Code Ann. §§ 15-78-10 to -200 (2005 & Supp. 2019).

Did the trial court err in granting the Academy's summary judgment motion when there was sufficient evidence to support Doe's claim and discovery was incomplete?

## STANDARD OF REVIEW

"On review from a grant of summary judgment, [this c]ourt applies the same standard applied by the circuit court pursuant to Rule 56(c), SCRCP." *Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 409 S.C. 568, 576, 762 S.E.2d 696, 700 (2014). "Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Murray v. Holnam, Inc.*, 344 S.C. 129, 137, 542 S.E.2d 743, 747 (Ct. App. 2001). "In reviewing the evidence, all inferences must be viewed in the light most favorable to the non-moving party." *Stevens & Wilkinson of S.C., Inc.*, 409 S.C. at 576, 762 S.E.2d at 700.

## LAW/ANALYSIS

Appellant has waived all arguments related to his negligence claim and limits his appeal to his defamation claim. As such, he argues that summary judgment was improper because sufficient evidence exists from which a jury could find that the Academy's employee's publication was within the employee's official duties. Additionally, Appellant argues the circuit court erred by not allowing for the completion of discovery. The Academy counters that summary judgment was proper because the alleged defamatory statements, if made by an employee of the Academy, were outside the scope of the employee's official duties. Therefore, the Academy contends, Appellant's claim is barred by the Tort Claims Act. Further, the Academy argues Appellant failed to demonstrate that additional discovery would uncover relevant evidence that would create a genuine issue of material fact. We agree with the Academy.

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "Where the plaintiff relies solely upon the pleadings, files no counter-affidavits, and makes no factual showing in opposition to a motion for summary judgment, the [circuit] court is required under Rule 56, to grant summary judgment, if, under the facts presented by the defendant, he was entitled to judgment as a matter of law.

*Humana Hospital-Bayside v. Lightle*, 305 S.C. 214, 216, 407 S.E.2d 637, 638 (1991).

## A. Scope of Official Duty

Pursuant to the Tort Claims Act, "[t]he State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances . . . ." S.C. Code Ann. § 15-78-40. However, the Act enumerates forty explicit exceptions to the State's waiver of immunity that limit government entities' tort liabilities. § 15-78-60. Among the exceptions is employee conduct outside the scope of official duty. § 15-78-60(17). "Scope of official duty" is defined as "(1) acting in and about the official business of a governmental entity and (2) performing official duties." § 15-78-30(i). Our supreme court has held that the term "scope of official duty" is narrower than the term "scope of employment." *See Frazier v. Badger*, 361 S.C. 94, 102, 603 S.E.2d 587, 591 (2004) (finding the term "scope of employment," as used in insurance policies, provides guidance for the term "scope of official duties" in claims arising from the Tort Claims Act). Therefore, "[i]f 'scope of employment' is a broader term than 'scope of official duties'—the term used in the governmental immunity statute—it follows that acts not within the 'scope of employment' are not within the 'scope of official duties.'" *Id.*

"[T]he course of someone's employment requires some 'act in furtherance of the employer's business.'" *Id.* (quoting *S.C. State Budget & Control Bd., Div. of Gen. Servs., Ins. Reserve Fund v. Prince*, 304 S.C. 241, 246, 403 S.E.2d 643, 646 (1991)). "An act falls within the scope of the [employee]'s employment if it was reasonably necessary to accomplish the purpose of the [employee]'s employment[] and it was done in *furtherance of the [employer]'s business*." *Wade v. Berkeley Cty.*, 330 S.C. 311, 319, 498 S.E.2d 684, 688 (Ct. App. 1998) (emphasis added). Conversely, "if the [employee] acts for some independent purpose of his own, wholly disconnected with the *furtherance of his [employer]'s business*, his conduct falls outside the scope of his employment." *Pridgen v. Ward*, 391 S.C. 238, 244, 705 S.E.2d 58, 62 (Ct. App. 2010) (emphasis added) (quoting *Crittenden v. Thompson–Walker Co., Inc.*, 288 S.C. 112, 116, 341 S.E.2d 385, 387 (Ct. App. 1986)).

Appellant asserts that a scintilla of evidence exists from which a jury might conclude that the publication of the defamatory statements was conducted within the scope of the employee's official duties. We disagree.

Here, there is little doubt that the publication of the defamatory letters was personally, not professionally, motivated and wholly disconnected from the Academy's business. *See Pridgen*, 391 S.C. at 245, 705 S.E.2d at 62 (holding the circuit court properly denied the appellants' motion for directed verdict because there was evidence that the appellants' actions were personally, not professionally, motivated, and thus, outside the scope of their employment). We are not persuaded by Appellant's argument that because the accusations of infidelity against him included another member of the Academy's staff, a jury could reasonably determine the publication of the defamatory letters was within the scope of employment or in furtherance of the Academy's business. *See id.*; *see also Doe v. S.C. State Budget & Control Bd., Office of Ins. Servs., Ins. Reserve Fund*, 337 S.C. 294, 297, 523 S.E.2d 457, 458 (1999) (finding police officer who stopped female motorists on suspicion of DUI and gave them the option of being arrested or providing sexual favors acted outside the scope of his official duties). The contents of the letters make clear that the author was operating with personal animus against Appellant and Jane Doe. To say nothing of the personal attacks conveyed in the letters, the fact that letters were mailed to Appellant's wife shows the author's purpose was principally to disrupt Appellant's personal, not professional, life. *See Pridgen*, 391 S.C. at 245, 705 S.E.2d at 62. Appellant himself acknowledged that the defamatory statements were personal.

Furthermore, assuming the employee used the Academy's printer, paper, and computer to create and publish the letters, the act of creating and publishing such letters is nevertheless outside the scope of employment of any of the Academy's employees. *Compare Pridgen* (finding directed verdict improper where there was evidence that prison employees may have acted outside the scope of their employment because they may have conspired against their coworker to get him fired based on personal grievances against him), *Loadholt v. S.C. State Budget & Control Bd., Div. of Gen. Servs., Ins. Reserve Fund*, 339 S.C. 165, 171–72, 528 S.E.2d 670, 674 (Ct. App. 2000) (finding even though an on-duty sheriff was "working in his county office and allegedly 'discussing county business' prior to and at the time of the alleged assaults" against his coworkers, the sheriff operated outside the course of his employment at the time of the assaults because he was not furthering the business of his employer), *Padgett v. S.C. Ins. Reserve Fund*, 340 S.C. 250, 254, 531 S.E.2d 305, 307 (Ct. App. 2000) (finding a teacher's sexual harassment of a student was not within the scope of his official duties because he was "not providing instruction, acting in his capacity as a faculty member, or furthering [the appellant]'s education"), *and Hamilton v. Davis*, 300 S.C. 411, 417, 389 S.E.2d 297, 300 (Ct. App. 1990) (finding even though the manager of rental properties had been collecting debris and removing it from the yard in furtherance of the property

owners' business, he was outside the scope of employment when he placed his truck in reverse and pushed victim with the open truck door because "he momentarily stepped away from" furthering the owners' business to commit an assault that "was clearly of a personal nature, indulged in for his own personal amusement"), *with Flateau v. Harrelson*, 355 S.C. 197, 205–06, 584 S.E.2d 413, 417 (Ct. App. 2003) (finding South Carolina Commission for the Blind board members acted within the scope of their official duties when they commanded the plaintiffs to remain inside a room to await an interview by the board members), *Wade*, 330 S.C. at 320, 498 S.E.2d at 689 (holding a jury could find an animal control officer was acting within the scope of employment when he crashed his personal truck into the plaintiff because the officer was acting on a call concerning a dead dog he had received the previous day), *and Crittenden*, 288 S.C. at 116, 341 S.E.2d at 387–88 (holding there was evidence to support a finding that the defendant's employee operated within the scope of his employment when he attacked the plaintiff because the employee assaulted the plaintiff at the job site during normal working hours with the purpose of collecting a debt owed to the defendant/employer).

Moreover, Appellant did not file any counter-affidavits or produce any evidence in opposition to the Academy's summary judgment motion. *See Shupe v. Settle*, 315 S.C. 510, 516, 445 S.E.2d 651, 655 (Ct. App. 1994) ("When a plaintiff is faced with a defendant's motion for summary judgment that is supported by evidence, the plaintiff cannot defeat the motion by relying upon the mere allegations of his complaint, but must disclose the facts he intends to rely on by affidavit or other proof."). Accordingly, we find the publication of the letters was not within the scope of official duties of any Academy employee. *See Frazier*, 361 S.C. at 102, 603 S.E.2d at 591 ("If 'scope of employment' is a broader term than 'scope of official duties'—the term used in the governmental immunity statute—it follows that acts not within the 'scope of employment' are not within the 'scope of official duties.'"); *see also Proctor v. Dep't of Health & Envtl. Control*, 368 S.C. 279, 291, 628 S.E.2d 496, 502 (Ct. App. 2006) ("[T]he provisions of the [Tort Claims] Act 'must be liberally construed in favor of limiting the liability of the State.'" (quoting § 15-78-20(f))).

### B. Fair Opportunity to Complete Discovery

"[S]ummary judgment must not be granted until the opposing party has had a full and fair opportunity to complete discovery." *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991).

> A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case, and why further discovery would uncover additional relevant evidence and create a genuine issue of material fact.

*Guinan v. Tenet Healthsystems of Hilton Head, Inc.*, 383 S.C. 48, 54–55, 677 S.E.2d 32, 36 (Ct. App. 2009).

Here, Appellant has not advanced a good reason as to why the extra month of discovery would uncover additional relevant evidence and create a genuine issue of material fact. *See id.*, 383 S.C. at 54–55, 677 S.E.2d at 36. As stated in **Section A**, the publication of the alleged defamatory letters was not in furtherance of the Academy's business, and hence, not within the scope of the alleged author's employment or official duties. *See Wade*, 330 S.C. at 319, 498 S.E.2d at 688 ("An act falls within the scope of the [employee]'s employment if it was reasonably necessary to accomplish the purpose of the [employee]'s employment[] and it was done in furtherance of the [employer]'s business."); *Frazier*, 361 S.C. at 102, 603 S.E.2d at 591 ("If 'scope of employment' is a broader term than 'scope of official duties'—the term used in the governmental immunity statute—it follows that acts not within the 'scope of employment' are not within the 'scope of official duties.'"). Even granting Appellant the benefit of every reasonable favorable inference—the assertions in the letters are untrue, the letters came from an employee who had access to the Academy's personnel files and used them to gather information to create and publish the letters, etc.—publishing the letters would still not fall within the scope of the employee's official duties. *See Wade*, 330 S.C. at 319, 498 S.E.2d at 688.

Furthermore, Appellant has not advanced a good reason why almost two years was insufficient to complete discovery—and specifically, to depose the suspected employee. *See Guinan*, 383 S.C. at 54–55, 677 S.E.2d at 36 ("A party claiming summary judgment is premature because they have not been provided a full and fair opportunity to conduct discovery must advance a good reason why the time was insufficient under the facts of the case . . . ."). When asked by the circuit court why he had not completed discovery, Appellant simply replied that discovery had moved a little slower than he would have liked and that the parties entered a scheduling order in July. However, the record does not reflect there being a scheduling order governing discovery at the time the Academy filed its motion for summary judgment. Therefore, we do not find Appellant's attempt to couch his dilatory efforts as being a byproduct of the scheduling order persuasive. Moreover, the Academy

had to file both a motion to compel Appellant to comply with discovery, and a petition for rule to show cause as to why Appellant should not be held in contempt for failing to comply with discovery.

In sum, the circuit court did not err by granting the Academy's motion for summary judgment because the publication of the defamatory letters was not within the scope of official duties of any of the Academy's employees and Appellant has not shown that additional discovery would uncover relevant evidence to create a genuine issue of material fact. *See Murray*, 344 S.C. at 137, 542 S.E.2d at 747 ("Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.").

## CONCLUSION

Based on the foregoing, we affirm the circuit court's order.

**AFFIRMED.**[3]

**HUFF, WILLIAMS, and GEATHERS, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.